Good morning, Your Honors. My name is Sean Sedegat. I represent the Petitioner Sharikyan. May it please the Court. This case revolves around three contentions of the Petitioner. First, the IJ's decision on credibility was fatally flawed because it was not based on specific and cogent reasoning. Second, the BIA completely failed to address the issue of ineffective assistance of counsel in any of its decisions. Third, the finding of changed conditions by the judge was speculative and based on conjecture. I want us to remember that this is a pre-Real ID Act case, and corroboration of evidence is not required unless the court has found the petitioner or the respondent incredible. In this case, the judge made rulings on the credibility issue on at least three facts that were completely wrong. The first one was the judge in the final decision. By the way, Your Honors, this, as you know, three decisions were rendered. It took the judge three times to get the decision to the point that the BIA can finally pass it along to this Court. The first one was completely devoid of any reasoning. It was basically conjecture or personal feelings of the judge. The second one contained some elements that the BIA was looking for, and the third one was pretty much like the second. There was really nothing added to it. One of the things that the judge completely got wrong during the questioning, he asked the petitioner, was your son hospitalized? She answered no. The son, on the other hand, during his testimony said I went to the hospital and got stitches. There is nothing wrong with either testimony. There is no dichotomy. Hospitalization means being taken in. It's an inpatient type thing. He was not hospitalized, but he did go to the hospital the next day for stitches. The judge takes issue with the fact that during her testimony, during the petitioner's testimony, she says there was a scar under the eye of my son. And during the son's testimony, he says there was a breakage of the skin under my eye and also proceeds to show the scar on his head. The judge takes issue with this and says he said there is a scar on his head. That's not correct. The judge is completely wrong. He did mention there is a breaking of skin under my eye. The third issue that they have is based on where the son was at the time that the mother of the petitioner was beaten. Initially, he says I was at the affairs of the business. However, if you look at the record, the record of proceedings shows the word indiscernible in parentheses right before he says affairs of business. We don't know what he said. Maybe he said I was on my honeymoon and taking care of affairs of business. So that part of the record of proceedings should be disregarded. It's incomplete. The part that is complete is the part that he says I was at Savon on my honeymoon. He mentions that twice, once to Mr. Martinez, the trial attorney, once to the previous attorney. Counsel, all of this evidence, the questions about whether or not she testified credibly and whether he testified credibly goes to the question of past persecution, which of course gives you an inference of future persecution. What about the claim of changed personal circumstances? That is, the reason for all of her persecution was her son was in competition with a government official who had thugs come over and beat them up. Her son is now in the United States. He's out of the business, and she could go back to Armenia and would not be in competition with anybody who would send thugs out to bother her. Your Honor, I draw the Court's attention to Moussa v. Mukasey, 2008. Once a respondent has proven past persecution or shown past persecution, the burden shifts to the government to show that the same situation does not hold later on in the future. The testimony at court was Gazelle, or the gentleman otherwise known as Gazelle, is a person in the government. He's very powerful, and he will have vengeance on us or a grudge against us. Why? What's the evidence of that? Your Honor, the case of Bagdasarian was an example of this. If the person in power has his authority questioned, that undermines him in the future. That's, you know, a different case. I'm not sure. A different case, a different government official. I don't even know if it's the same country. But what is the evidence in this case that if she's returned to Armenia and she's not in the importation of sunflower oil business that she is going to be persecuted? The judge asked this question, and the respondent answered. This is a powerful government figure. He holds a grudge against us, and if I go back, I'm afraid he will do things. And logically... What's his motivation? Well, a person in authority, when they have their authority questioned, it's like a mafia godfather, Your Honor. Once their authority is questioned, their veneer is gone. In what way was she questioning his authority? It appeared that she was being abused because her son was staying in the business. They were very much questioning the authority because when somebody in authority tells you to do something, you do it or else. And in this case, they didn't. They stuck to their guns and they stayed where they had to stay. And ultimately, they left and so they're not doing it anymore. So they didn't stick to their guns. I don't believe what happened, Your Honor, was simply as a matter of getting a competitor out of business. I believe that in this case, as they testified, was a person of authority realizing that their power is being undermined and they wanted to show this person. Again, the burden shifts to the government. The government has not shown anything that... Except the evidence is that the son is no longer in the business. That fact has been established. Now, what inferences can be drawn from that? What basis is there to believe that this person will continue to abuse Petitioner if given the opportunity? Like I reiterated earlier, Your Honor, I believe that the person in authority, if they have their position undermined, they're more likely than not to... Is there any evidence that speaks to the personality of the individual we're talking about? There isn't, Your Honor. No. Your Honor, as far as the question that you asked, the case of Hassan, 2004, in that case it was very similar to this. It was based on a business endeavor and the individual left the country and their contention was that if they returned, the person would seek vengeance on them just to let the others know they need to throw the line. That was very similar to this case. As far as the BIA, Your Honors, the record is clear that the BIA did not address the issue of ineffective assistance of counsel at all. And on a case like this, the BIA does not have authority to do this. I want to ask you a question. Please, Your Honor. I know you've developed the case orally and to some extent in your briefs as though the persecutor was the high government official. But what caught my attention was the earlier episode where she testified that she had a knife put to her throat. And are you abandoning that claim of persecution? I am not, Your Honor. I was getting to it. Very good question. Thank you for that. Before I go further, regarding the failure to consider the arguments, the case of Franco Rosendo versus Gonzalez is a similar case. They completely disregarded an argument. Regarding that, Your Honor, the immigration judge in his decision states that what am I supposed to do, believe that this happened to her because of 17 lines on her affidavit that match with what she said in court. So the judge agrees that her testimony, based on what happened in the hospital, at least matches what she has said in court. There is no... And she's found to be credible. That's correct. There it is. Isn't that the case? I believe so, Your Honor. You could wrap it up there. I'll take her advice, Your Honor. May I reserve the rest of my time? You may. You can send your bill to Judge Noonan Chambers. All right. Let me go on. Good morning. May it please the Court. My name is Dallin Holyoke, trial attorney with the United States Department of Justice, and I represent the Attorney General in this matter. This case is now before the Court after three separate bodies reviewed Petitioner's Asylum claims and found them entirely without merit, the Asylum Office, the IJ, and the Board. The agency not only found Ms. Shurikin's claims unpersuasive, but they found, after observing her convey her story in person, that she was not truthful about her claims. Indeed, to quote the IJ, when her testimony was compared with her declaration and her son's testimony, the wheels kind of came off. Are you saying she was found not credible? Yes, I am, Your Honor, but a very important point. I don't think the Court needs to address that issue. What's that? No, that's a very important point. It is very important. Are you saying the IJ found her incredible? Yes, the IJ did find her incredible. But I don't think — But argued that as free? The IJ did make an adverse credibility finding, yes. She did not make the finding, did she? No, the IJ did make an adverse credibility finding in this case. But I think more importantly, the IJ made an alternative finding, which was she didn't demonstrate a well-founded fear of persecution. And I think that is where this Court can make the decision in this case. As Judge Bivey pointed out before, even if her testimony is accepted as credible, she didn't demonstrate that she has an objectively reasonable basis for fearing persecution in Armenia. Her claims were entirely based on her subjective fear that this individual would hold a grudge against her. But there's no evidence in the record, no objective evidence, and much less no compelling evidence, for this panel to find that the IJ erred by finding that she does not have a well-founded fear of persecution when she returns to Armenia. Can we even be sure that the BIA spoke to that? I mean, one of the problems I have, and it's not just this case, but when the BIA adopts and affirms and cites to Bourbano, if it just says that, then it puts its arms around everything the IJ has said. But sometimes it makes additional comments, so it's doing something other than simply adopting and affirming. And in this instance, they started talking about particular parts. It does talk about they agree with the adverse credibility finding, that it's sufficiently supported by the record. And then they give sort of a generic sentence, we agree the respondent has not met her burden of proof, which could simply be, since you're not credible, you don't have any other evidence, you haven't met your burden. And then it goes on to say there's not a due process violation by not having an evidentiary hearing. There's no specific mention at all of the proposition that she doesn't have anything to fear today because of the changed circumstance of her son not being in the business. So the BIA talks specifically about other parts of the case and doesn't talk about that one part, which, for reasons I can understand, is the part you'd like us to go to first. But can we be confident that the BIA actually went to that part or relied upon that part? Well, Your Honor, I think, first of all, there is matter of Bourbano, which does make it clear that the Board did adopt the decision of the IJ. And the IJ did find that she did not have a well-founded fair prosecution. That's the conclusion based on the – I want to tease this out. One reason that you conclude that is because there's no evidence of past persecution and thus there's no inference that is to be drawn. That can be taken from the IJ's finding that her testimony was incredible. Now, my question to opposing counsel was a little different. That is, let's assume that we disagree with the IJ, that we don't think the reasons are sufficient. Even if she's got evidence of past persecution, that's only an inference of future persecution. We have reason to question whether there will be any future persecution because her son is no longer in the sunflower oil business. Now, did the IJ make that finding? The IJ did find that she did not have a reasonable basis to fear future persecution. I think that's exactly where the IJ – Which page of the IJ's decision are you on? I'm on the IJ's final decision. It's the final page of IJ's decision. Now, you're looking at AR 35, page 2, perhaps? The reasons for that persecution no longer existed? Yes, that's correct. And that's exactly the point the IJ was making, was that there was no objective basis in the record to find that she still had a reasonable basis to fear persecution. And do we have any confidence – this goes to Judge Clifton's question now – do we have any confidence that the BIA agreed with this reason? I think under Madam Bourbono they had to have because they did review the record. And also I think this Court – the BIA is afforded a presumption of regularity. So if you look at – and the IJ is also afforded a presumption of regularity. So when you look at the Board's review of the IJ's decision, they did adopt and affirm what the IJ found here. I don't think this is overly complex. I think what happened here was there was no reasonable basis for her to fear persecution. Her claim was entirely based on her son's – and it was entirely based on her son's – Well, there was a previous episode that didn't involve her son. Right, the hospital incident. But she never claimed to have any future fallout from that incident. If you look at the testimony and read it, there is no – she never claims to continue to fear persecution from what happened to her at the hospital. It ends. She goes to work for her son, and that's where her asylum claim picks up steam. And that's where she goes forward. I think that is where this Court can easily make a finding supporting the agency's decision in this case because there was no well-founded fear of future persecution. But I do want to also address Petitioner's claim about the due process violation from – he claims the Board didn't address ineffective assistance of counsel. So before you get to that, what's the strongest evidence that she wasn't telling the truth? I think the strongest piece of evidence is the fact that she – her son claims that she was in Russia. She claims that during the time that her son says she was in Russia, she was in Armenia involved in the women's movement. I think if she's in Russia, none of her claim can possibly be true because her entire claim is based on one instance, and it flows from her being involved in the women's movement and from – or, I'm sorry. And where does – what does her son testify? The son – if the Court will indulge me for just one moment, I think. I'm sorry. I confused my cases. I apologize. We've been known to have that problem, too. Suddenly it's the women's movement. I'm switching. Wait a minute. That's the next case. I apologize for that. No, these are very confusing. I definitely apologize. Okay. Here we're back to the woman who's getting abused because her son's in the – That's correct. The margarine business, Your Honor. I think the most important one is the date of the alleged beating. And she – Date? The date of the alleged beating. This case, like the other cases, also based on one instance of where a Petitioner was beaten. In this case, she claims that it happened when her son was away on his honeymoon. He got on stand – Didn't he immediately correct that? Well, didn't the son immediately correct that? Well, the son corrected it when it was pointed out in the hearing, and I think that's the stuff of classic credibility. I have another question. Why is it inconsistency between what she says and what her son says means that she's not telling the truth? Maybe the son has got it screwed up or might be lying through his teeth, but how does that establish that she's not credible? Well, I think the first part is that her claim is based on his claim. No, no. He was granted asylum. Her claim is based on the motivation that came from his business. He was granted asylum, and they were hoping to piggyback on that. Right. But her claim stands in front of us separately. We don't take what the son said as gospel truth, and so any inconsistency between what she says and what he says is demonstration that she's not telling the truth. But I think it also goes to the fact that if somebody – if you bring in a corroborating witness and that corroborating witness testifies that you were not there when you said you were, then that definitely undermines your credibility. It calls it into question. It wasn't so much, as I understood it, that she wasn't there, as that was he gone to do some kind of business or was he gone on his honeymoon? And he actually did testify that it was right after his wedding and he was away on his honeymoon. There's the one somewhat passing reference, which is surrounded by inaudibles, about he's off on a trade mission someplace. Is that what – is that the best argument you've got with regard to credibility? Well, I think that's the first one. I think the second part is the only link in this case to a political motivation is their letter to the National Assembly. She claims in her declaration that they complained to the National Assembly. That's where this case takes up a political link. After that, when she's asked to testify, she says, no, I did not claim to – I didn't petition to the National Assembly. Petitioner goes to great lengths to try and argue that it was just some kind of confusion between the words used for National Assembly and the prosecutor's office. But there – if you – when you review the transcript, there was no confusion between those terms. And, in fact, the IJ was very clear about questioning her. Were you talking about a complaint to the National Assembly? And she was very clear about saying, no, I did not complain to the National Assembly. They lose the political motivation in this case because that's where it's linked up. That's where they complained to the superiors that were – or they complained to the individuals that are linked to their alleged persecutor. There is nothing suggesting a finding that the persecution was not on one of the enumerated grounds. So I'm not sure what the significance of that is. Well, I think that that's how – it just – it goes to a credibility issue of linking it up. They were trying to craft a claim that linked it to a political issue. By having that equivocation, they show that they're not credible because it's not linked to a political issue. It shows a classic case of trying to craft an asylum claim that's based on a political basis. I think the IJ made the credibility finding on that. But the IJ could have gone further if he so chose and made a finding regarding – I'm going to take you over time, but let me ask you to go ahead and address what you were starting to address when we sidetracked you a little bit. We have an argument with regard to due process, and it may be articulated a little differently. The piece that I'm curious about for myself is that the BIA never did, in its disposition, make reference to the ineffective assistance of counsel discussion, which apparently had been put before it. First, is that factually correct? And second, is there an explanation? I think, yes, first, factually that's correct. Second is, if you review Petitioner's final brief to the Board, Petitioner makes no mention of an argument regarding ineffective assistance of counsel. And I would actually point the Court to Petitioner's brief, which is – final brief, which is found at page 6 of the administrative record. If you review this final brief, Petitioner waives the argument of ineffective assistance of counsel. I think it's a bit much to require the Board to address an argument that was waived by Petitioner in his final brief. It's certainly possible to think that that was a tactical decision of Petitioner's counsel to move forward beyond the ineffective assistance of counsel claim. But I think the more important point here is that he failed to demonstrate prejudice. As this Court knows, to make a claim of ineffective assistance of counsel, you have to show that somewhere on the record there's prejudice. Now, they go to great lengths to try and argue that because her claim was denied, that's automatic prejudice per se. But it's not true. If you look at the record, the record was developed. There's no claim that there was a failure to develop the record in this case. And I also think that it's interesting, if you look to the ineffective assistance of counsel issue, the case was remanded two times. Essentially, she won, despite the alleged ineffective assistance of her counsel. Well, that actually suggests another question, which is, what's the difference between I.J. decision two, which was remanded as being insufficient, and I.J. decision three, which seems to me state exactly the same set of reasons, and yet it was accepted by the BIA and affirmed? Well, the difference was that I.J. addressed the issue of the hospital, of her employment at the hospital. And I think that's what the Board wanted it to address when it remanded the final time. As I see my time has expired, I would like to conclude with the Court's permission, if that's possible. Thank you. The Supreme Court under Elias Zacharias has directed that Ms. Shurikian must bear the burden of identifying not only compelling record evidence that the I.J. aired, but compelling evidence to support the further conclusion that the only conclusion any reasonable fact finder could draw from the record is that she was truthful. When taken together, it's certainly reasonable to find that she crafted her asylum claim and she has failed to produce any argument or record evidence to compel otherwise. Also, there is no compelling evidence to demonstrate her clear- Actually, we know all of this. Okay. If there's nothing else, we appreciate your argument. Thank you, Your Honor. We rest on the briefs. And we'll hear now from the Petitioner for rebuttal. Thank you, Your Honor. Answering Judge Bybee's question regarding the business having been closed, in Grava, it was stated that where the whistle blows against corrupt government officials, it may constitute political activity sufficient to form the basis of persecution on account of political opinion. Once the political opinion has been formed, then we have mixed motive cases. We don't know if this individual, upon returning, would be viewed as somebody who is politically opposed to the government or a businessman who is now- But the whistle blowing was really while she was working in the hospital, right? She's not blowing. They're not whistle blowers because of their activities selling sunflower oil. Respectfully, Your Honor, that's incorrect because she states that we were selling things less expensive than this person was, and he wanted to keep it secret. Wanting to keep that secret is akin to letting the public know that this person is selling things at an exorbitantly higher price or a higher price. That's akin to whistle blowing. And this individual- That's pretty far afield from whistle blowing. That's just good competition, and he didn't like it. I'm not sure that's really- That's not exposing government corruption or mismanagement or other things in any kind of formal way that we would recognize as whistle blowing just because they undercut his prices. Your Honor, as a political figure, you don't want to be known as somebody who's scalping people on prices. So for this individual, it would be whistle blowing. For a regular businessman, maybe not. But you're in a position of trust. You don't want to be known as somebody who's charging higher for other people, and you would have every interest to keep this issue quiet. Well, it's not like she was going around or her son was going around saying, this guy overcharges everybody. They're not marketing it with signs. They're just offering up the same product for a lower price. If you're not still in the business, that's not exactly whistle blowing in the future. Your Honor, we are not talking about his motive. We are talking about Giselle, the individual there. The individual in Armenia doesn't know at what point my client or the mother would go off explaining these things. Has she ever done anything before other than work for her son trying to sell a product at a lower price? Has she written letters to the newspapers saying Giselle or whatever his name is, is a gouger, he charges too much? Not prior to coming over, Your Honor. Has she ever walked around with a sign in front of his store saying he charges too much? Not prior to coming over. But I believe the arguments are presented at least creates this issue that the government cannot overcome this burden. It's a heavy burden on the part of the government. We are arguing about this here. And I don't think the government would be able to overcome that burden given these arguments. Your Honor, regarding the issue of national assembly, families often pluralize things that one member has done. She clearly explains, excuse me, I said we when it was I. My son made the record with the national assembly. She explains that on the record. As far as corroborative evidence, I agree with Your Honor completely. This is a pre-Real ID Act case. No corroboration is necessary. If anything, if there is a discrepancy with what the son said, his testimony could be discounted. But hers, standing on her own, is internally consistent. There was nothing wrong with it. And the judge couldn't enunciate anything wrong with that on its own. Thank you very much, Your Honors. I submit no further. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. Now, the next case had a counsel that's double booked today. So let me ask if counsel for petitioner is here. Okay. Then we will proceed with the next case listed on the calendar.
judges: Noonan, Clifton, Bybee